FILED

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

2013 SEP 19 A 8:33

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

JAMES A. WHITTAKER

    Plaintiff

v.

    Case No. 1:13CV1175 LO/TCB

AMERICAN EXPRESS CENTURION
BANK (On record with the State
Corporation Commission of Virginia as
American Express Centurion, Inc.
Serve: CT Corporation System
       4701 Cox Road Suite 301
       Glen Allen, Virginia 23060

and

AMERICAN EXPRESS TRAVEL
RELATED SERVICES COMPANY, INC.
Serve: CT Corporation System
       4701 Cox Road Suite 301
       Glen Allen, Virginia 23060

    Defendants

## COMPLAINT

James Whittaker ("Mr. Whittaker"), by counsel, submits the following Complaint for monetary damages and declaratory judgment against principal defendants American Express Centurion Bank, American Express Travel Related Services Company, Inc. (collectively referred to as "AmEx") arising from AmEx's failure to abide by its contractual obligations and its willful violation of the Fair Credit Reporting Act, the Truth in Lending Act, and the Electronic Funds Transfer Act.

## PARTIES

1.     Mr. Whittaker is a resident of the Commonwealth of Virginia.

2. American Express Centurion Bank is a Utah corporation, authorized to transact business in the Commonwealth of Virginia.

3. American Express Travel Related Services Company, Inc. is a New York corporation, authorized to transact business in the Commonwealth of Virginia.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) as Mr. Whittaker is a Virginia resident, American Express Centurion Bank is incorporated and has a principal place of business in Utah and American Express Travel Related Services, Inc. is incorporated and has a principal place of business in New York. Additionally, this Court has jurisdiction pursuant to 15 U.S.C. § 1693, 15 U.S.C. § 1601 *et seq.* and 15 U.S.C.S. § 1681s-2(a).

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1).

## FACTUAL BACKGROUND

6. Mr. Whittaker applied for and obtained two American Express credit cards, account numbers ending in 7009 and 7000.

7. In connection with obtaining these accounts, Mr. Whittaker consented to an Agreement Between Cardmember and American Express Travel Related Services Company, Inc. (the "Agreement"). A true, accurate and authentic copy of the Agreement is attached as **Exhibit 1**.

8. Mr. Whittaker also entered into an agreement with American Express Centurion Bank.

9. In April, 2008, Mr. Whittaker traveled to Japan for business purposes.

### Star Gazeer

10. On three occasions occurring between April 18, 2008 and April 21, 2008, Mr. Whittaker and his employee dined at Star Gazeer A/K/A Star Gazer, a restaurant in Japan that serves both food and drinks.

11. On each occasion that Mr. Whittaker dined at Star Gazeer, the server took Mr. Whittaker's AmEx card at the beginning of the meal and held onto the card to secure payment, as was the standard practice at Star Gazeer.

12. At the end of the meals, the server provided Mr. Whittaker with a copy of his receipt, which was in the Japanese language. Mr. Whittaker signed the receipts assuming it properly represented the charges he incurred at Star Gazeer.

13. After leaving Japan, Mr. Whittaker discovered that Star Gazeer had charged over $110,000 on his accounts for the three visits, even though he had only spent, at most, a few hundred dollars at the restaurant ("Disputed Charges").

14. Mr. Whittaker immediately alerted AmEx to the fraudulent charges and requested that AmEx immediately commence a fraud investigation.

15. In connection with the investigation, undersigned counsel communicated several times with AmEx regarding the fraudulent charges, and provided AmEx with an English translation of the alleged receipts (the "Translated Receipts").

16. A review of the Translated Receipts shows that it would be impossible for two people to consume $110,000 of food and alcohol at three separate dinners.

17. Moreover, Mr. Whittaker's signature was not on any of the receipts submitted by Star Gazeer to AmEx in connection with AmEx's "investigation" and were otherwise forged signatures.

3

18. In fact, none of the signatures on the receipts on file match the signatures on any of the other receipts. Every signature from the receipts provided by Star Gazeer to AmEx is considerably different.

**AmEx's Investigation**

19. In connection with Am Ex's investigation, on October 17, 2008, undersigned counsel, who had spent countless hours on the phone with AmEx, wrote to the Fraud Investigation Unit at Amex requesting that AmEx remove the unauthorized charges. **Exhibit 2 is** a true, accurate and authentic copy of the October 17, 2008 correspondence, which was received by AmEx.

20. AmEx claimed to have investigated the fraudulent charges and denied Mr. Whittaker's request that the charges be removed.

21. AmEx did not provide any specific details regarding its purported investigation or the reason for its denial.

22. AmEx reported the Disputed Charges to Trans Union, LLC, Experian Services Corp. and Equifax, Inc. (the "Credit Reporting Agencies").

**AmEx tries to collect the Disputed Charges**

23. AmEx thereafter employed United Recovery Systems, an independent debt collector, to pursue the debt collection on their behalf. On November 25, 2008, undersigned counsel spoke with and subsequently wrote to TiJi Thomas of United Recovery Systems explaining that AmEx was not entitled to the funds it sought. **Exhibit 3** is a true, accurate and authentic copy of the November 25, 2008 correspondence, which was received by United Recovery Systems.

4

24. Subsequently, AmEx filed suit against Mr. Whittaker in the Fairfax County Circuit Court to collect the charges. A true, accurate and authentic copy of the Complaint filed by AmEx in the Fairfax County Circuit Court is attached as **Exhibit 4**.

25. In response to the suit, Mr. Whittaker threatened to file a Plea in Bar asserting that AmEx's claims were barred in their entirety because the charges were fraudulent. In response to the Plea in Bar, AmEx voluntarily dismissed its lawsuit in February, 2009 and never re-filed it. **Exhibit 5** is a true, accurate and authentic copy of the final non-suit order entered by the Fairfax County Circuit Court.

26. After dismissing and declining to prosecute their claim in the Fairfax County Circuit Court, AmEx thereafter employed, yet again, another debt collection agency, American Service Center to pursue the Disputed Charges.

27. Once again, undersigned counsel, on January 22, 2010, wrote to Debbie Bell of American Service Center to explain that AmEx had no right to funds which it sought. **Exhibit 6** is a true, accurate and authentic copy of the January 22, 2010 correspondence, which was received by American Service Center.

28. American Service Center immediately ceased attempting to collect the Disputed Charges.

29. In June, 2010, the law firm of Steingold & Angelidis, PLC ("SA PLC") became involved in this matter and threatened to commence a lawsuit against Mr. Whittaker in order to recover the disputed charges.

30. In response, undersigned counsel explained the factual circumstances to SA PLC.

31. SA PLC subsequently requested an affidavit from Mr. Whittaker, which was provided to them in June, 2010. **Exhibit 7** is a true, accurate and authentic copy of the affidavit.

32. As of January, 2011, SA PLC claimed, in writing, that AmEx was still investigating this matter. **Exhibit 8** is a true, accurate and authentic copy of the January, 2011 E-mail exchange with SA PLC.

33. In February 11, 2011, AmEx contacted Mr. Whittaker directly and in writing, requesting to speak with him regarding the nature of the Disputed Charges. **Exhibit 9** is a true, accurate and authentic copy of the February 11, 2011 correspondence from AmEx to Mr. Whittaker.

34. Mr. Whittaker contacted AmEx immediately to explain the dispute.

35. However, on February 18, 2011, AmEx wrote to Mr. Whittaker claiming to not have enough information to evaluate the Disputed Charges. **Exhibit 10** is a true, accurate and authentic copy of the February 18, 2011 correspondence from AmEx to Mr. Whittaker.

36. On August 5, 2012, Mr. Whittaker received correspondence from AmEx requesting to settle the dispute. **Exhibit 11** is a true, accurate and authentic copy of the August 5, 2012 correspondence from AmEx to Mr. Whittaker.

37. On December 18, 2012, undersigned counsel wrote to American Express regarding the Disputed Charges and adverse credit entries on Mr. Whittaker's credit reports issued by the Credit Reporting Agencies. **Exhibit 12** is a true, accurate and authentic copy of the December 18, 2012 correspondence, which was received by AmEx, and transmitted and received by the Credit Reporting Agencies.

38. The December 18, 2012 correspondence was transmitted to the credit reporting agencies who in turn contacted AmEx regarding the dispute, thereby satisfying the requirements of the Fair Credit Billing Act.

39.     On December 25, 2012, AmEx wrote to Mr. Whittaker stating that it is refusing to reconsider its initial decision to not remove the Disputed Charges from his account. **Exhibit 13** is a true, accurate and authentic copy of the December 25, 2012 correspondence.

40.     Additionally, AmEx has not reported the credit entry as a disputed item to the Credit Reporting Agencies, despite receiving correspondence from undersigned counsel regarding the dispute.

## Mr. Whittaker has been damaged

41.     Mr. Whittaker's credit has been adversely affected by AmEx's willful actions.

42.     In the past year, Mr. Whittaker has been denied loans he would otherwise have qualified for had it not been for AmEx's adverse entry on his credit reports.

43.     Specifically, in the past year, Mr. Whittaker has had to pay an additional $38,500 in additional interest charges on his commercial building loan due to loan requirements based on underwriting criteria that considers his credit reports.. In fact, his interest rate increased from 4% to 9% because of the adverse credit entry submitted by AmEx based upon the disputed charges.

44.     Mr. Whittaker has also been unable to refinance this loan because of AmEx's adverse credit entry.

45.     Additionally, and in the past year, Mr. Whittaker has been denied credit by Wells Fargo Bank, PNC and Suntrust Bank based on the Disputed Charges.

46.     Mr. Whittaker would have been able to obtain credit from Wells Fargo Bank, PNC and SunTrust bank had it not been for the adverse entry submitted by AmEx and based upon the Disputed Charge.

## COUNT 1
### (Violation of the Fair Credit Reporting Act - 15 U.S.C.S. § 1681s-2(b)

47. The preceding paragraphs are restated and incorporated herein.

48. In connection with the December 18, 2012 letter (Exhibit 12), the Credit Reporting Agencies provided notice of Mr. Whittaker's dispute to AmEx.

49. 15 U.S.C.S. § 1681s-2(b) of the Fair Credit Reporting Act required that AmEx

   o Conduct an investigation with respect to the disputed information;

   o Review all relevant information provided by the consumer reporting agency pursuant to section 611(a)(2) [15 U.S.C.S. § 1681i(a)(2)]; and

   o Report the results of the investigation to the consumer reporting agency;

50. Additionally, the Fair Credit Reporting Act required AmEx to determine whether the information it had previously submitted is complete and accurate.

51. In response to the December 18, 2012 correspondence, AmEx violated 15 U.S.C.S. § 1681s-2(b) of the Fair Credit Reporting Act by (1) failing to properly investigate Mr. Whittaker's dispute, which resulted in AmEx ignoring the clearly fraudulent signatures, Mr. Whittaker's affidavit, or common sense, which would dictate that Mr. Whittaker could not have spent $110,000 on food and drinks by two people for three meals.

52. Additionally, AmEx did not report the debt as disputed to the Credit Reporting Agencies.

53. Its failure to note the debt was disputed is misleading in such a way and to such an extent that it can be expected to have an additional adverse effect on Mr. Whittaker's credit.

54. AmEx's violation was knowing and intentional, and made in a conscious disregard of the rights of Mr. Whittaker.

55. Mr. Whittaker is entitled to damages and civil penalties in accordance with 15 U.S.C.S. § 1681(n).

Wherefore, James A. Whittaker requests that this Court award him $250,000 in compensatory damages pursuant to 15 U.S.C.S. § 1681(n)(a), punitive damages as allowable by this Court, costs and attorneys fees, and all other relief deemed appropriate.

## COUNT 2
### (Violation of Electronic Funds Transfer Act - 15 U.S.C.S. § 1693)

56. The preceding paragraphs are restated and incorporated herein.

57. Mr. Whittaker did not authorize Star Gazeer to improperly charge his card in excess of $110,000.

58. Mr. Whittaker notified AmEx within sixty (60) days to state that he disputed the charges.

59. AmEx knowingly and willfully concluded that Mr. Whittaker's account was not in error when such a conclusion could not reasonably have been drawn from the evidence available to AmEx at the time of its investigation.

60. Mr. Whittaker is not liable for the charges incurred at Star Gazeer in excess of $50.00 and is entitled to recover treble damages.

61. Mr. Whittaker has been, directly and through counsel, communicating with AmEx in an attempt to resolve this dispute. In fact, Amex had this matter investigated through January, 2011 with two different law firms. Subsequently, Amex continued to correspond with Mr. Whittaker in its efforts to collect this fraudulent debt and resolve the dispute. Accordingly, the statute of limitations for this claim has been equitably tolled and AmEx's conduct is ongoing.

Wherefore, James A. Whittaker requests that this Court declare that the maximum amount for which he is liable is not in excess of $50.00 in accordance with 15 U.S.C.S. § 1693(g) and to grant all other relief deemed appropriate.

## COUNT 3
### (Violation of the Truth in Lending Act - 15 U.S.C.S. § 1601 *et seq.*)

62. The preceding paragraphs are restated and incorporated herein.

63. The Disputed Charges were not authorized by Mr. Whittaker, as Star Gazeer did not have actual, implied or apparent authority to charge $110,000 to Mr. Whittaker's AmEx accounts.

64. Mr. Whittaker is not liable for the Disputed Charges because the liability exceeds $50.

65. Similar to the Violation of Electronic Transfer of Funds Act, the statute of limitations for this claim has been equitably tolled and AmEx's conduct is ongoing.

Wherefore, James A. Whittaker requests that this Court declare that the maximum amount for which he is liable is not in excess of $50.00 in accordance with 15 U.S.C.S. § 1643 and to grant all other relief deemed appropriate.

## COUNT 4
### Declaratory Judgment

66. The preceding paragraphs are restated and incorporated herein.

67. Mr. Whittaker contends that the Disputed Charges are fraudulent and that is not required to pay them.

68. AmEx contends that the Disputed Charges are valid and collectible from Mr. Whittaker.

69. An actual controversy exists between Mr. Whittaker and AmEx regarding whether AmEx can collect the Disputed Charges.

70.     This Court can determine the rights of the parties with respect to the Disputed Charges pursuant to 28 U.S.C. § 2201.

Wherefore, James A. Whittaker requests that this Court determine the rights of the parties with respect to the disputes charges and grant all other relief deemed appropriate.

## COUNT 5
## Breach of Contract

71.     The preceding paragraphs are restated and incorporated herein.

72.     Mr. Whittaker executed an Agreement with AmEx.

73.     The Agreement requires that Mr. Whittaker pay all charges for which he intended to incur.

74.     To that end, AmEx can only collect the charges that Mr. Whittaker intended to incur and cannot collect fraudulent charges.

75.     AmEx has breached the Agreement by attempting to collect charges it knows, or should know, are fraudulent.

76.     Mr. Whittaker has been damaged by AmEx's attempt to collect these charges.

77.     Mr. Whittaker has abided by all of the terms of the Agreement.

78.     Mr. Whittaker is entitled to specific performance, namely to have the adverse entries from AmEx removed from his credit report.

Wherefore James A. Whittaker requests that this Court grant him actual damages not to exceed $500,000, attorneys fees, and costs, and grant all other relief deemed appropriate.

## JURY DEMAND

Plaintiff James A. Whittaker requests a trial by jury on these issues.

Dated: September 18, 2013

Respectfully Submitted,

_____
Robert J. Cunningham, Jr.
Virginia State Bar No. 27547
Counsel for James A. Whittaker
REES BROOME, PC
1900 Gallows Road, Seventh Floor
Tysons Corner, Virginia 22182
(703) 790-1911 (phone)
(703) 848-2530 (fax)
rcunningham@reesbroome.com


_____
Mariam W. Tadros
Virginia State Bar No. 75502
Counsel for James A. Whittaker
REES BROOME, PC
1900 Gallows Road, Seventh Floor
Tysons Corner, Virginia 22182
(703) 790-1911 (phone)
(703) 848-2530 (fax)
mtadros@reesbroome.com